Timothy F. Umbreit   SBN 145932
Attorney At Law
4701 Cartwright Ave
Toluca Lake, CA 91602

818-535-7381(v)
818-334-5659 (f)

tim@timumbreit.com

*Attorney for Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>GUILLERMO LUIS CALIXTRO and<br><br>TINA CALIXTRO<br><br><br><br><br><br><br>Debtors-in-Possession | ) **Chapter 11**<br>)<br>) **CASE NO.: 2:10-BK-33389-ER**<br>)<br>)<br>) **DEBTORS' AMENDED DISCLOSURE**<br>) **STATEMENT DESCRIBING DEBTORS'**<br>) **CHAPTER 11 PLAN OF**<br>) **REORGANIZATION**<br>)<br>) <u>**Amended Disclosure Statement Hearing**</u><br>)<br>) **Date:  March 23, 2011**<br>) **Time:  10:00 a.m.**<br>) **Place: Courtroom "1568"**<br>)<br>) <u>**Amended Plan Confirmation Hearing**</u><br>) **See Disclosure Statement for Voting and**<br>) **Objecting Procedures**<br>)<br>) **Date:  TO BE SET**<br>**Time:**<br>**Place: Courtroom "1568"** |

# I.

## INTRODUCTION

Guillermo Luis Calixtro and Tina Calixtro are the Debtors in a Chapter 11 bankruptcy case, commenced on June 9, 2010 by their filing of a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. §101 et seq. Chapter 11 allows the Debtors, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets to the estate, or a combination of both. The Debtors are the parties proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a combined liquidating and reorganizing plan. In other words, the Proponents seek to accomplish payment under the Plan by selling one parcel of real property owned by them and using their post-confirmation earnings to retain the other. The effective Date of the proposed Plan is ten (10) days after entry of an Order Confirming this Plan of reorganization.

A.  Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1) **WHO CAN VOTE OR OBJECT,**

(2) **WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive of the Plan is confirmed)AND HOW THIS TRATMENT COPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

(3) **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

**(4) WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5) WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6) WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information: concerning the Plan. The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

B.  Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

**THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HEOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.**

1.  Time and Place of Confirmation Hearing

The hearing where the Court will determine whether or not to confirm the Plan will take place on _____(date), at _____ .m., in Courtroom "1568", United States Bankruptcy Court, Central District of California, 255 E. Temple Street, Los Angeles, California 90012.

2.  Deadline for Voting For or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Timothy F. Umbreit Attorney at Law, 4701 Cartwright Avenue, Toluca Lake, California 91602

Your ballot must be received by _____(date)  or it will not be counted.

3.   Deadline for Objecting the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon Timothy F. Umbreit Attorney at Law, 4701 Cartwright Avenue, Toluca Lake, California 91602.

4.   Identify of Person to Contact for More Information Regarding the Plan

Any interested party desiring further information about the Plan should contact Timothy F. Umbreit Attorney at Law, 4701 Cartwright Avenue, Toluca Lake, California 91602.

C.  Disclaimer

The financial date relied upon in formulating the Plan is based on Debtors' books and records. The information contained in the Disclosure Statement was provided by the Debtors. The Plan Proponents represent that everything stated in the Disclosure Statement is true to the Proponents' best knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.

## BACKGROUND

A.  Description and History of the Debtors:

Guillermo Luis Calixtro and Tina Calixtro ("Debtors") are individuals who, as many other people tried to take advantage of the real estate market in California and the creative financing being offered three to five years ago. Like many other individuals and business, they looked at the real estate market as an ever growing and profit making opportunity and, like many individuals and business, they were caught by surprise when the real estate market collapsed.

The Debtors have lived in California all of their lives and are the parent of three children. Currently living at 9824 S. Hawkstone Avenue, Whittier, California, and have an income property located at 19830 E. Saddle Ridge Ln., Walnut, California.

B.  Principals/Affiliates of Debtor's Business:

As set forth above Guillermo Luis and Tina Calixtro are individuals. Guillermo Luis Caixtro is currently employed as a paralegal assistant with the Law Offices of L. Bishop Austin &

Associates. Tina Calixtro is working as an Office' assistant for a real estate company in California.

C.  Management of the Debtor Before and After Bankruptcy:

As individuals, the Debtors have managed their own financial affairs, hiring professionals only when necessary. Post-confirmation, the Debtors will continue to manage their affairs.

D.  Events Leading to Chapter 11 Filing:

Guillermo Luis Calixtro in the last 20 past years had a small business as a licensed real estate broker, and Tina Calixtro was his personal assistant. Both were working long hours to make the business succeed. They had an office at city of Montebello, California with about 10 real estate agents under Guillermo Luis Calixtro control and administration. Unfortunately, in or about 2006-2007 the real estate business started to slow down and he was forced used his credit cards to keep the business running, and to keep the overhead that this kind of business incurred. Debtors decided to refinance and apply for a home equity line of credit on their real estate property at 9824 S. Hawkstone Avenue, Whittier to bring cash to the business. Unfortunately the real estate business was going down to the limit, and all the cash was absorbed so fast that Debtors decided to borrow money to some friend, and in 2007 Debtors requested a personal loan of $65,000.00 from a Pablo Garcia and Laura Martinez, such money was used to improve the commercial location where the business was running, to attract more clients sellers and buyers to invest in the real estate market. Unfortunately, one more time, the economy was collapsing and the money was absorbed again for the overhead that the business had to cover. Debtors were forced to maximize their credit card to resolve the overhead on the business and cover personal expenses too. After few months, a friend of Debtors, Alfredo Leon came and offered a personal loan of $100,000.00 to help the business keep running and eventually make it worth.  One more time, that money was used to cover monthly expenses with the expectation to close pending real estate transactions, but this never happened. As a final resource, in 2008 Debtors contacted a friend of them  Edgardo F. Paredes and explained the business situation, and he agreed to give a personal loan of $90,000.00 to Debtors to make the business  keep and running. In the meantime, Debtors were paying the commercial rent as much as possible. At that time the monthly rent was

about $9,500.00 per month, plus telephone expenses and other utilities for a total of $4,500.00 per month. At the same time of these events, Debtors were applying for a loan modification to make the mortgage payments on Debtors' two (2) real estate properties more affordable. Unfortunately all their efforts to keep the business running and to obtain the approval on the loan modification on the real estate properties were unsuccessful. Finally Debtors realized that they were doing a business that was dead due to crash of the real estate market, and decided to close their business.

Debtors received a notice of Trustee sale on the income property at Walnut, California and received several solicitation letters to advise about the imminent foreclosure schedule for June 9, 2010 at 10 a.m. In order to preserve the real estate assets they owned, the Debtors elected to file for relief under Chapter 11 and reorganize their financial problems in order to recoup some of their investment in the properties.

E.  Significant Events During the Bankruptcy:

1.  Bankruptcy Proceedings:

The Debtors filed for relief under chapter 11 on June 9, 2010. Since said date the Debtors have been, and continue to be, Debtors-in-Possession.

The Debtors have employed Timothy F. Umbreit, Attorney at law, a General Bankruptcy Counsel for the Debtors-in-Possession. The Court approved the employment of Timothy F.Umbrait, Attorney at Law, as General Bankruptcy Counsel for the Debtors-in-Possession.

In light of the fact that the debtors have two properties and one of them generates income and to secure creditors having an interest in the rents, issues and profits, the following motions were filed: a motion to value collateral and determine secured status of creditors on the Walnut property, also a motion to value collateral and determine secured status of creditors on the Whittier property, a motion for authority to sell, free and clear of liens, the Whittier property. These motions have been granted by Court and the Orders have been entered accordingly.

The Debtors are current in the requirements of the Office of the United States Trustee. The monthly Operative Reports have been filed, and the Debtors will remain in compliance.

Currently, there are no adversary proceedings or creditor motions pending, except the pending resolution of the Motion for Relief filed by secured creditor BAC Home Loans Servicing L.P.

2.  Other Legal Proceedings

The Debtors are now negotiating with their secured creditor EMC Mortgage Company to authorize a loan modification on the Whittier property, since the original Buyer cancelled his purchase offer of the property because the current value is $245,000.00 which is lower than the purchase price offered of $325,000. Contractual Arrears on the loan will be paid in the plan over 60 months after confirmation. The Plan does not impair secured creditor loan. The Debtors are also in contact with secured creditor BAC Home Loans Servicing, The BAC Home Loans Servicing  payment for the loan on property at Walnut, should be $3240.87 for 312 equal monthly installments for a total of $1,011,151.44.  The NPV is $765,000.  The rate is 2.25% to determine NPV.  No interest will accrue of t he secured claim and all payments are to be applied to principal.

3.  Actual and Projected Recovery of Preferential or Fraudulent Transfers

No value is estimated to be realized from the recovery of fraudulent and preferential transfers. The Debtors have reviewed their transactions and have concluded that no such claims for relief exist in this estate.

4.  Procedures Implemented to Resolve Financial Problems

To attempt fix the problems that led to the bankruptcy filing, Debtors have elected to negotiate a loan modification on the first deed of trust with secured creditor EMC for the Whittier property, reaching such agreement will eliminate some cash flow for the estate, but it will also eliminate the negative financial drain imposed by the monthly payments in full to secured creditors. The junior lien the above property has been avoided per Court Order already entered. Guillermo Luis Calixtro has joined a real estate company to use his Real Estate Broker

license, which should supplement his income generated from his employment with the Law Offices of L. Bishop Austin, Attorneys at Law.

Tina Calixtro is still working as an Office' assistant at a local real estate company. Currently the Debtors are renting out the Walnut property and expect that it will sustain itself under the terms of the Debtors' Plan of Reorganization.

5.    Current and Historical Financial Conditions:

The Debtors are now mainly wage earners. Guillermo Luis Calixtro generates an estimated $3,500.00 per month net income from his income as a paralegal at the Law Offices of L. Bishop Austin. Tina Calixtro generates $1,800.00 per month as an Office's assistant.

Neither the Walnut property not the Whittier property has equity, meaning the Debtors cannot use any equity of these properties to fund their Plan. The only other income available to the Debtors is the income generated from the Walnut property in the amount of $3,500.00.

The Debtors' monthly living expenses amount to $7,916.19 (including of the payment on the Walnut property), leaving them with a surplus each month of $883.81. It is from this surplus that the Debtors will fund their Plan of Reorganization.

The identity and fair market value of the estate's assets are listed in Exhibit A. See also Debtors' financial history set forth in Exhibit B.

**III.**

**SUMMARY OF THE PLAN OF REORGANIZATION**

A.  What Creditors and Interested Holders Will Receive Under the Proposed Plan

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired. The plan sets forth the treatment each class will receive.

B.  Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the following claims in a class.

**1.      Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtor's

Chapter 11 case which are allowed under Code Section 507(a)(1).  The Code requires that all

administrative claims be paid on the Effective Date of the Plan,

unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(1) administrative claims and their

treatment under this Plan.

| <u>Name</u> | <u>Amount Owed</u> | <u>Treatment</u> |
|---|---|---|
| Timothy F. Umbreit Attorney at Law | $5,000.00 | Paid in full on the effective of the plan |
| Clerk's Office Fees | Unknown | Paid in full on effective date |
| Office of the U.S. Trustee Fees | Unknown | Paid in full on effective date |
| TOTAL: | $5,000.00 | |

<u>Court Approval of Fees Required:</u>

The Court must approve all professional fees listed in this chart. For all fees except

Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a

properly noticed fee application and the Court must rule on the application.  Only the amount of

fees allowed by the Court will be required to be paid under this Plan.

As indicated above, the Debtors will need to pay $5,000.00 worth of administrative

claims of the Effective Date of the Plan unless the claimant has agreed to be paid later or the

Court has not yet ruled on the claim.

**2.      Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described

by Code Section 507(a)(8)[14].  The Code requires that each holder of such a 507(a)(8) priority tax

claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

The following chart lists <u>all</u> of the Debtor's Section 507(a)(8)[15] priority tax claims and their treatment under this Plan.

| Description | Amount Owed | Treatment |
|---|---|---|
| None | $0.00 | n/a |

**C.      Classified Claims and Interests**

**1.      Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan

| Class | Description | Insider Y/N | Impaired Y/N | Treatment |
|---|---|---|---|---|
| | | | | |

| 1-A | -Secured claim of: EMC a/k/a JPMorgan Chase Bank | NO | YES | -Debtor will make regular mortgage payments plus 1/60 of the arrears until the loan is approved for a Loan modification. At that time, the mortgage payment will be adjusted accordingly. |
| | -Collateral: 9824 S. Hawkstone Avenue, Whittier, CA 90605 | | | |
| | -Collateral value: $245,000.00 as per Court order entered on 11/11/2010 | | | -A Loan Modification agreement between debtor and this creditor EMC is in the process to be approved |
| | -Priority of secured interest: First Deed of Trust. | | | -Total payout: 100% |
| | -Total claim amount as per Proof of Claim #18: $464,493.38 | | | |
| | -Arrears: $43,292.01 | | | |
| | -Principal: $421,201.37 | | | |

| | | | | |
|---|---|---|---|---|
| **1-B** | -Secured claim of: BAC Home Loans Servicing LP<br><br>-Collateral: 19830 E. Saddle Ridge Ln., Walnut, CA 91789<br><br>-Collateral value: $765,000.00 as per Court order entered on 11/11/2010<br><br>-Priority of secured interest: First Deed of Trust.<br><br>-Total claim amount as per Proof of Claim #22: $1,175,280.98<br><br>-Arrears: $164,129.54<br><br>-Principal: $1,011,151.44 | NO | YES | - This creditor has elected to be treated under 1111(b) full secured debt.<br><br>According to that, The BAC payment should be $3240.87 for 312 equal monthly installments for a total of $1,011,151.44. The NPV is $765,000. The rate is 2.25% to determine NPV. No interest will accrue of t he secured claim and all payments are to be applied to principal.<br><br>-Total payout: 100% |

| 1-A-1 | - Unsecured claim of the Secured claim of: Bank of America, N.A.<br><br>-Collateral: 9824 S. Hawkstone Avenue, Whittier, CA 90605<br><br>-Collateral value: $245,000.00 as per Court order entered on 11/11/2010<br><br>-Priority of interest: Second Deed of Trust.<br><br>-Principal owed: $112,157.26<br><br>-Total claim amount: $112,157.26 | NO | YES | - This claim has been avoided as per Court order entered on 11/11/2010 Docket # 51.<br><br>- The total claim is treated as part of the General unsecured class, and this class will receive more than it will receive in a Chapter 7 case liquidation analysis. |

| 1-B-1 | -Unsecured claim of Secured claim of BAC Home Loans Servicing LP.<br><br>-Collateral: 19830 E. Saddle Ridge Ln., Walnut, CA 91789<br><br>-Priority of interest: First Deed of Trust | NO | YES | - This creditor has elected to be treated under 1111(b) full secured debt., and this claim is considered as part of the Class **1-B** above. |

| 1-B-2 | - Unsecured of the secured claim of: BAC Home Loans Servicing LP<br><br>-Collateral: 19830 E. Saddle Ridge Ln., Walnut, CA 91789<br><br>-Collateral value: $765,000.00 as per Court Order entered on 11/11/10<br><br>-Priority of interest: Second Deed of Trust.<br><br>-Principal owed: $121,000.00<br><br>-Total claim amount: $121,000.00 | NO | YES | - This claim has been avoided as per Court order entered on 11/11/2010 Docket # 51.<br><br>- The total claim is treated as part of the General unsecured class, and this class will receive more than it will receive in a Chapter 7 case liquidation analysis. |

## 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all classes containing Debtor's 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims and their treatment under this Plan (see Exhibit G for more detailed information about each priority unsecured claim)

| **Class** | **Description** | **Impaired (Y/N)** | **Treatment** |
|---|---|---|---|
| **2** | NONE | n/a | n/a |

## 3.    Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The following chart identifies this Plan's treatment of the class containing <u>all</u> of Debtor's general unsecured claims (see Exhibit H for detailed information about each general unsecured claim):

///

///

///

///

///

| Class | Description | Impaired(Y/N) | Treatment |
|-------|-------------|---------------|-----------|
| **3** | All General Unsecured creditors from schedule F, | Y | - Total claim: $800,978.01<br><br>Payout: The total claim is treated as General unsecured class, and this class will receive more than it will receive in a Chapter 7 case liquidation analysis. |

### 4. Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and limited partners. If the Debtor is an individual, the Debtor is the interest holder.

The following chart identifies the Plan's treatment of the class of interest holders (see Exhibit I for more detailed information about each interest holder):

| Class | Description | Impaired (Y/N) | Treatment |
|-------|-------------|----------------|-----------|
| **4** | Interest holders | n/a | n/a |

### D. Means of Effectuating the Plan

### 1. Funding for the Plan

The Plan will be funded by the following:  the collection of rents from the real property located at 19830 E. Saddle Ridge Ln., Walnut, California, and the post-confirmation earnings of

the Debtors, and the future income tax refund for duration of the plan.   .

### 2.    Post-confirmation Management

 Post-confirmation management will be handled by the Debtors, Guillermo Luis Calixtro and Tina Calixtro. They will maintain the Walnut property, collect rents, tender payments and, if it becomes necessary, retain a real estate broker to sell the real property. For their services, the Debtors will not receive any regular compensation, however, to the extent any monies exist after the payments of all claims, the Debtors will retain al net proceeds.

### 3.    Disbursing Agent

  The Debtors   shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve  without   bond and shall receive  no compensation   for distribution services rendered and expenses incurred pursuant to the Plan.

### E.    Risk Factors

The proposed Plan has the following risks:

Although the Buyer found for the Whittier property, has defaulted and escrow did not close. Under those circumstances, secured creditor will most likely foreclose on the Whittier property, eliminating the assets from the estate, unless secured creditor agree and enter a mutual agreement for a Loan Modification, as requested by the Debtors.

In the event the Debtors elect to sell the Walnut property, there is the possibility that the real estate market wil not have recovered and noy buyer will be found. Even is a buyer is found, there is the possibility that buyer defaults and escrow does not close. Under those circumstances, secured creditor will, most likely foreclose on the Walnut property, eliminating the asset from the estate.

Since much of this Plan will be funded from post-confirmation earnings, the Debtors may

lose their jobs or have insufficient income to fund the Plan, and since Debtors have not incurred any debt since the filing of this case, this case may be converted to a Chapter 7 case, and in the event of a default, this case be dismissed.

**F.     Other Provisions of the Plan**

    **1.     Executory Contracts and Unexpired Leases**

    **a.     Assumptions**

The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan (see Exhibit C for more detailed information on unexpired leases to be assumed and Exhibit D for more detailed information on executory contracts to be assumed):  None

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtor.  The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above.  If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section I.B.3. of this document for the specific date.

    **b.     Rejections**

On the Effective Date, the following executory contracts and unexpired leases will be rejected:  None

The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section I.B.3. of this document for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS  THIRTY (30) DAYS

FROM THE EFECTIVE DATE OF THE PLAN   .

Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not

timely filed, unless the Court later orders otherwise.

**2.      Changes in Rates Subject to Regulatory Commission Approval**

This Debtors  are not  subject to governmental regulatory commission approval

of its rates.

**3.      Retention of Jurisdiction**

The Court will retain jurisdiction to the extent provided by law.

**G.    Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN

MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN

ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible

tax consequences is intended solely for the purpose of alerting readers about possible tax issues

this Plan may present to the Debtor.  The Proponent CANNOT and DOES NOT represent that

the tax consequences contained below are the only tax consequences of the Plan because the Tax

Code embodies many complicated rules which make it difficult to state completely and

accurately all the tax implications of any action.

The following are the tax consequences which the Plan will have on the Debtor's tax

liability:  The Debtors do not anticipate any adverse tax consequences from this Plan of

Reorganization. The potential sale of the Whittier property is at  significant loss and therefore

should not generate any income. The Walnut property will be retained, again, no substantial

income tax consequences will be experienced.

Should the Walnut property be sold, again it will be sold at a substantial loss, thus

generating no income tax consequences.

# IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are <u>not</u> the only requirements for confirmation.

### A. Who May Vote or Object

### 1. Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### 2. Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

### a. What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE IS _____ .  A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult Exhibits F through L to see how the Proponent has characterized your claim or interest.

**b.    What Is an Impaired Claim/Interest**

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that classes  <u>**1-A,  1-B,  1-A-1,  1-B-1,  1-B-2, AND  3**</u>  are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that classes  <u>**NONE**</u>  are unimpaired and that holders of claims in each of these classes therefore do not have the right to vote to accept or

reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3. Who is **Not** Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section IV.A.8.

**6.   Votes Necessary for a Class to Accept the Plan**

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

**7.      Treatment of Nonaccepting Classes**

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

**8.      Request for Confirmation Despite Nonacceptance by Impaired Class(es)** The party proposing this Plan   <u>will</u>   asks <u>the Court</u> to confirm this Plan by cramdown on impaired classes   <u>1-A,  1-B,  1-A-1,  1-B-1, 1-B-2,  AND  3</u>   if any of these classes do not vote to accept the Plan.

Please note that the proposed Plan treatment described by this Disclosure Statement <u>cannot</u> be crammed down on the following classes :   <u>None</u> . AS A RESULT, IF ANY OF THESE CLASSES DOES <u>NOT</u> VOTE TO ACCEPT THE PLAN, THE PLAN WILL <u>NOT</u> BE CONFIRMED.

**B.     Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons:  The real property owned by the Debtors is over-encumbered, thus no equity exists. The remaining assets of the Debtors are either of nominal value (and thus would be abandoned by a Trustee) or are exempt from Chapter 7 administration.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive

under a Chapter 7 liquidation.

///

**ASSETS VALUE AT LIQUIDATION VALUES:**

|  |  |  |
|---|---|---|
|  |  | $5,000.00 |
| CURRENT ASSETS |  | $0.00 |
| a. | Cash on hand | $0.00 |
| b. | Accounts receivable |  |
| c. | Inventories | $ |
|  | TOTAL CURRENT ASSETS |  |
|  |  | $2,500.00 |
| FIXED ASSETS |  | $0.00 |
| a. | Office furniture & equipment | $3,500.00 |
| b. | Machinery & equipment | $0.00 |
| c. | Automobiles |  |
| d. | Building & Land | $ |
|  | TOTAL FIXED ASSETS |  |
|  |  | $0.00 |
| OTHER ASSETS |  | $0.00 |
| a. | Customer list |  |
| b. | Other intangibles | $0.00 |
|  | TOTAL OTHER ASSETS | **$11,000.00** |
|  |  | ========= |

**TOTAL ASSETS AT LIQUIDATION VALUE**

|  |  |
|---|---|
|  | $18,153.00 |
| **Less:** |  |
| Secured creditor's recovery | $0.00 |
| **Less:** |  |
| Chapter 7 trustee fees and expenses | $0.00 |
| **Less:** |  |
| Chapter 11 administrative expenses | $0.00 |
| **Less:** |  |
| Priority claims, |  |
| excluding administrative expense claims | $24,500.00 |
| **Less:** | ========= |
| Debtor's claimed exemptions | $0.00 |
| (1) Balance for unsecured claims | $0.00 |
| (2) Total amt of unsecured claims |  |

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE**

**OR RETAIN IN A CH. 7 LIQUIDATION: = _0.00%_**

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE**

**OR RETAIN UNDER THIS PLAN:**      =     **From 3.00% To 4.750 % .**

Below is a demonstration, in tabular format, that all creditors and interest holders will

receive at least as much under the Plan as such creditor or holder would receive under a Chapter

7 liquidation.

| CLAIMS & CLASSES[33] | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | **100%** | **0.00%** |
| Priority Tax Claims | **100%** | **0.00%** |
| Class 1-A | **100%** | **0.00%** |
| Class 1-B | **100% Creditor elected 1111(b)** | **0.00%** |
| Class 1-A-1 | **from 3.00% to 4.750%** | **0.00%** |
| Class 1-B-1 | **100% Creditor elected 1111(b)** | **0.00%** |
| Class 1-B-2 | **from 3.00% to 4.750%** | **0.00%** |
| Class 2 | **n/a** | **n/a** |
| Class 3 | **from 3.00% to 4.750%** | **0.00%** |
| Class 4 | **n/a** | **n/a** |

C.    **Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means

that confirmation of the Plan is not likely to be followed by the liquidation, or the need for

further financial reorganization, of the Debtor or any successor to the Debtor under the Plan,

unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect

considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to

pay all the claims and expenses which are entitled to be paid on such date.  The Plan Proponent

maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| Cash Debtor will have on hand by Effective Date | <u>$5,000.00</u> |
| **To Pay:** Administrative claims | <u>-    0.00</u> |
| **To Pay:** Statutory costs & charges | <u>**-    0.00**</u> |
| **To Pay:** Other Plan Payments due<br>      on Effective Date | <u>-    0.00</u> |
| Balance after paying these amounts............... | $  5,000.00 |

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| | |
|---|---|
| <u>$ 5,000.00</u> | Cash in DIP Account now |
| <u>+ 7,000.00</u> | Additional cash DIP will accumulate from<br>net earnings between now and Effective Date |
| <u>+      0.00</u> | Borrowing |
| <u>+      0.00</u> | Capital Contributions |
| <u>+      0.00</u> | Other |
| <u>$12,000.00</u> | **Total** |

The second aspect considers whether the Proponent will have enough cash over the life of

the Plan to make the required Plan payments.

The Proponent has provided financial statements which include both historical and

projected financial information. Please refer to Exhibit B for the relevant financial statements.

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL

ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL

STATEMENTS.

In summary, the Plan proposes to pay   from $800.00  to $1,000  each  month  . As

Debtor's financial projections demonstrate, Debtor will have an average cash flow, after paying

operating expenses and post-confirmation taxes, of  800.00 to 1,000.00  each  month  for the

life of the Plan.  The final Plan payment is expected to be paid on   05/30/2016  . The Plan

Proponent contends that Debtor's financial projections are feasible.  As shown by Debtor's

historical financial statements, Debtor's average  $8,800.00  cash flow, after paying secured

debts and  living expenses during this bankruptcy case. The Debtor's average  $7,065.00 cash

flow, after paying secured debts there is approximately $800.00 to $1,000.00 remaining.

Furthermore, as discussed earlier in the Disclosure Statement at Section II.E.4, Debtor has

implemented procedures to  resolve their cash flow problems  .

### V.

### EFFECT OF CONFIRMATION OF PLAN

**A.    Discharge**

This Plan provides that upon  Confirmation  , Debtor shall be discharged of liability for

payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C.§

1141.  However, the discharge will not discharge any liability imposed by the Plan. The

discharge will not be entered until the Debtors have made all of the payments to the unsecured

class.

**B.    Revesting of Property in the Debtor**

Except as provided in Section V.E., and except as provided elsewhere in the Plan, the

confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.    Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.    Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

**E.    Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.    Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property,

but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

## G.    Final Decree

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Date: <u>February 15, 2011</u>            TIMOTHY F. UMBREIT
                                                        Attorney at Law


                                                        <u>/s/ Timothy F. Umbreit</u>
                                                        Timothy Umbreit
                                                        Attorney for Debtors and Debtors-in-Possession
                                                        Guillermo Luis Calixtro and Tina Calixtro

# VI.

## SUPPORTING DECLARATIONS

Timothy F. Umbreit   SBN 145932
Attorney At Law
4701 Cartwright Ave
Toluca Lake, CA 91602

818-535-7381(v)
818-334-5659 (f)

tim@timumbreit.com

*Attorney for Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>GUILLERMO LUIS CALIXTRO and<br><br>TINA CALIXTRO<br><br><br>Debtors-in-Possession | **Chapter 11**<br><br>**CASE NO.: 2:10-BK-33389-ER**<br><br>**DECLARATION OF GUILLERMO CALIXTRO IN SUPPORT OF DEBTOR'S AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTORS' AMENDED CHAPTER 11 PLAN OF REORGANIZATION** |

I, Guillermo Calixtro, declare as follows:

1.  I am the debtor in the above captioned case; I am over the age of 18 and make this declaration on my knowledge, information and belief, I am competent to provide this declaration and if called upon as a witness I could and would testify competently hereto.

2.  I make this declaration in support of the approval of the amended Disclosure Statement filed herein.

3.  The matters and facts set forth in the amended Disclosure Statement filed herewith are true and correct and are accurate to the best of information, knowledge and belief.

4.  All exhibits, schedules and statements are true, correct and accurate to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 14th Day of February, 2011 at Los Angeles, California.

_____
Guillermo Calixtro

Timothy F. Umbreit   SBN 145932
Attorney At Law
4701 Cartwright Ave
Toluca Lake, CA 91602

818-535-7381(v)
818-334-5659 (f)

tim@timumbreit.com

*Attorney for Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>GUILLERMO LUIS CALIXTRO and<br><br>TINA CALIXTRO<br><br><br>       Debtors-in-Possession | ) **Chapter 11**<br>)<br>) **CASE NO.: 2:10-BK-33389-ER**<br>)<br>)<br>) **DECLARATION OF TINA CALIXTRO IN**<br>) **SUPPORT OF DEBTOR'S AMENDED**<br>) **DISCLOSURE STATEMENT**<br>) **DESCRIBING DEBTORS' AMENDED**<br>) **CHAPTER 11 PLAN OF**<br>) **REORGANIZATION**<br>)<br>)<br>) |

I, Tina Calixtro, declare as follows:

1.  I am the debtor in the above captioned case; I am over the age of 18 and make this declaration on my knowledge, information and belief, I am competent to provide this declaration and if called upon as a witness I could and would testify competently hereto.

2.  I make this declaration in support of the approval of the amended Disclosure Statement filed herein.

3.  The matters and facts set forth in the amended Disclosure Statement filed herewith are true and correct and are accurate to the best of information, knowledge and belief.

4.  All exhibits, schedules and statements are true, correct and accurate to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 14th Day of February, 2011 at Los Angeles, California.

_____
Tina  Calixtro

## EXHIBIT A - LIST OF ALL ASSETS

| Description | Secured debt | Fair market value | Equity | Exempt |
|---|---|---|---|---|
| Real Estate at 9824 S. Hawkstone Ave. Whittier, CA | $579,463.43 | $245,000.00 | $0.00 | $0.00 |
| Real Estate at 18930 E Saddle Ridge Ln. Walnut CA | $1,310,736.98 | $765,000.00 | $0.00 | $0.00 |
| Personal household goods and furniture | $0.00 | $8,000.00 | $8,000.00 | $8,000.00 |
| Various books, pictures, personal items | $0.00 | $500.00 | $500.00 | $500.00 |
| Personal clothing and wearing apparel | $0.00 | $3,500.00 | $3,500.00 | $3,500.00 |
| Personal small jewelry items | $0.00 | $300.00 | $300.00 | $300.00 |
| Debtor DRE Broker license | $0.00 | $5,000 | $0.00 | License not transferrable |
| Debtor Notary Public Commission | $0.00 | $0.00 | 0.00 | Commission expired on 12/4/2010 |
| Toyota 4Runner 2006 | $4,527.00 | $4,000.00 | $0.00 | $0.00 |
| Toyota Rav4 2006 | $3,696.00 | $3,500.00 | $0.00 | $0.00 |
| Toyota Scion TC 2008 | $9,930.00 | $5,000.00 | $0.00 | $0.00 |
| Toyota Corolla 2006 | $0.00 | $3,500.00 | $3,500.00 | $3,500.00 |
| Personal computer, desk, printer, chairs | $0.00 | $2,500.00 | $2,500.00 | $2,500.00 |

## EXHIBIT B - FINANCIAL STATEMENTS

## NOT APPLICABLE

## **EXHIBIT C - UNEXPIRED LEASES TO BE ASSUMED**

**NOT APPLICABLE**

## <u>EXHIBIT D - EXECUTORY CONTRACTS TO BE ASSUMED</u>

**NOT APPLICABLE**

## EXHIBIT E - LIQUIDATION ANALYSIS

**ASSETS VALUE AT LIQUIDATION VALUES:**

CURRENT ASSETS

| | | |
|---|---|---|
| a. | Cash on hand | $5,000.00 |
| b. | Accounts receivable | $0.00 |
| c. | Inventories | $0.00 |

TOTAL CURRENT ASSETS $

FIXED ASSETS

| | | |
|---|---|---|
| a. | Office furniture & equipment | $2,500.00 |
| b. | Machinery & equipment | $0.00 |
| c. | Automobiles | $3,500.00 |
| d. | Building & Land | $0.00 |

TOTAL FIXED ASSETS $

OTHER ASSETS

| | | |
|---|---|---|
| a. | Customer list | $0.00 |
| b. | Other intangibles | $0.00 |

TOTAL OTHER ASSETS $0.00

**TOTAL ASSETS AT LIQUIDATION VALUE** **$11,000.00**
=========

**Less:**
Secured creditor's recovery $18,153.00
**Less:**
Chapter 7 trustee fees and expenses $0.00
**Less:**
Chapter 11 administrative expenses $0.00
**Less:**
Priority claims, $0.00
excluding administrative expense claims
**Less:**
Debtor's claimed exemptions $24,500.00
=========

(1) Balance for unsecured claims $1,435.273.70

(2) Total amt of unsecured claims $0.00

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 4701 Cartwright Ave., Toluca Lake, CA 91602

A true and correct copy of the foregoing document described as **NOTICE OF HEARING ON DEBTORS' AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTORS; AMENDED CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  02/15/11    I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

```
Richard J Bauer, Jr rbauer@mileslegal.com
Christopher M McDermott ecfcacb@piteduncan.com
Roundup Funding, LLC Linh K Tran bline.chapter13@blinellc.com
The Bank of New York Mellon, as Trustee Richard J Bauer, Jr rbauer@mileslegal.com
The Bank of New York Mellon Mark Domeyer mdomeyer@mileslegal.com
U.S. The Bank of New York Mellon Mark Domeyer mdomeyer@mileslegal.com
United States Trustee (LA) Dare Law dare.law@usdoj.gov
```

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On  02/15/11  , I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| _02/15/11_ | Timothy F. Umbreit | _/s/ Timothy F. Umbreit_ |
|---|---|---|
| Date | Type Name | Signature |

1

2    BAC Home Loans Servicing
     7105 Corporate Drive
     Plano, TX 75024
3

4    BAC Home Loans Servicing
     7105 Corporate Drive
     Plano, TX 75024
5

6    Khio Yang and Keum Ja Yang
     828 Adelita St
     Montebello, CA 90640
7

8    Alfredo Leon
     5024 S Vermont Ave
     Los Angeles, CA 90237
9    Edgardo Paredez
     10328 Lesterford Ave
     Downey, CA 90241
10

11   Khio Yang and Keum Ja Yang
     3001 W. Beverly Blvd
     Montebello, CA 90640
12

13   Pablo and Laura Garcia
     11216 Meadowlark Ln
     Bloomington, CA 92316
14   Mundy Media Corporation
     3301 Barham Blvd, Ste 100
15   Los Angeles, CA 90068

16   Martha Mendez Caudillo
     Superior Court of California
17   Case # VC053324
     12720 Norwalk Blvd
     Norwalk, CA 90650
18

19   CARDMEMBER SERVICE
     PO BOX 94014
     Palatine, IL 60094
20

21   Bank of America
     PO BOX 15726
     Wilmington, DE 19886
22   CARDMEMBER SERVICE
     PO BOX 94014
23   Palatine, IL 60094

24   WASHINGTON MUTUAL
     PO BOX 78065
     Phoenix, AZ 85062
25

26   Tomas Barrales
     1413 E. 53rd St
     Los Angeles, CA 90011
27

28   Blanca Avelar
     12028 Fourth Avenue
     Lynwood, CA 90262

1

2
TARGET NATIONAL BANK
PO BOX 59317
Minneapolis, MN 55459

3

4
TARGET NATIONAL BANK
PO BOX 59317
Minneapolis, MN 55459

5
Sears Gold Master Card
PO BOX 6282
6
Sioux Falls, SD 57117

7
Office Depot Credit Plan
PO BOX 689020
Des Moines, IA 50368
8

9
CARDMEMBER SERVICE
PO BOX 94014
Palatine, IL 60094

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28